IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-CV-0423-MSK

**MICHELLE DENISE TRACY POULOS,**

    Plaintiff,

*v.*

**NANCY A. BERRYHILL, Acting Commissioner of Social Security,**

    Defendant.

---

**OPINION AND ORDER REVERSING THE COMMISSIONER'S DECISION**

---

**THIS MATTER** comes before the Court on the Plaintiff's Complaint (# **1**), the Plaintiff's Opening Brief (# **15**), the Defendant's Response (# **16**), and the Plaintiff's Reply (# **17**). For the following reasons, the Commissioner's decision is reversed and the matter is remanded for further proceedings.

## I. JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

## II. BACKGROUND

**A.   Procedural History**

Michelle Poulos seeks judicial review of a final decision by the Commissioner denying her claim for disability insurance benefits (DIB) under the Social Security Act.[1] In January 2012, Ms.

---

[1] Ms. Poulos' application for supplemental security income (SSI) was remanded by the Appeals Council, so this appeal covers only her application for DIB. Her SSI claim was based on new

Poulos filed for DIB, claiming she became disabled in October 2010. Tr. at 785–94. Following remand by the Appeals Council, her application was denied at all administrative levels and she now appeals to this Court.

**B.    Factual Background**

The Court summarizes only the medical evidence relevant to its decision. Here, the dispositive issue concerns the weight given to the medical opinions as to limitations in Ms. Poulos' mental capacity. At the time of her alleged onset of disability, Ms. Poulos was 40 years old. Tr. at 787. She was previously employed as a cashier and in customer service. Tr. at 841.

In June 2012, Dr. Brent Geary, a consulting examiner, saw Ms. Poulos for a mental evaluation. Tr. at 984–89. Dr. Geary observed that Ms. Poulos' motor level was elevated but observed no other mannerisms or physiological symptoms. Tr. at 985. Though her speed of speech was hastened, her associations were logical. Tr. at 985. She appeared nervous to Dr. Geary but was able to focus on the topics at hand. Tr. at 985. He estimated her intellectual functioning to be at the bottom of the average range. Tr. at 985. Ms. Poulos scored 29 out of 30 on the modified Mini Mental Status Examination, incorrectly identifying a clock to read 1:55 instead of 11:10. Tr. at 985. Based on his examination, Dr. Geary diagnosed Ms. Poulos as suffering from bipolar disorder (currently moderate), history of alcohol abuse, and victim of physical abuse as an adult. Tr. at 987. He then opined that she had no limitations understanding and memory, but was unreliable, disorganized, and prone to leave tasks and duties undone. Tr. at 988. With regard to social interaction, she was able to get along, but she was withdrawn at the

---

medical evidence that could not affect her DIB claim because the evidence postdated her date last insured (DLI), which is December 30, 2014. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); Tr. at 5, 8–9. Ms. Poulos challenges this determination, but the Court does not reach the issue for reasons stated below.

exam. Tr. at 988. Finally, he opined that she would have difficulty with change in the workplace because she is not organized and a disruption of structure would cause her trouble. Tr. at 988.

In July 2012, Dr. S.K. Castro, a state-agency non-examining physician, completed a psychiatric review technique (PRT). Tr. at 990–1003. She found Ms. Poulos to be mildly limited in her activities of daily living, and moderately limited in both social functioning and maintaining concentration, persistence, and pace. Tr. at 1000. She found no episodes of decompensation. Tr. at 1000. In explaining her opinion, Dr. Castro noted that Ms. Poulos' statements are generally consistent and credible, but she only gave partial weight to Dr. Geary's opinion that Ms. Poulos would have difficulty with workplace changes because it was not consistent with the overall evidence. Tr. at 1002. She concluded that the overall evidence supports no more than moderate limitations in all work-related mental abilities. Tr. at 1002.

Dr. Castro later completed a mental residual functional capacity (RFC) assessment based on her review of the record in July 2013. Tr. at 1051–53[2] . She found Ms. Poulos was not significantly limited in many areas of ability: remembering locations and work procedures, understanding and remembering both simple and detailed instructions, carrying out simple instructions, performing activities on a schedule with regular and punctual attendance, sustaining an ordinary routine without supervision, working in proximity with others without distraction, making simple work-related decisions, asking simple questions, getting along with coworkers without distraction, maintaining socially appropriate behavior, being aware of normal hazards and taking precautions, traveling in unfamiliar places, and setting realistic goals and plans independent of others. Tr. at 1051–52. Dr. Castro found Ms. Poulos moderately limited in carrying out detailed instructions, maintaining attention and concentration for extended periods, completing a

---

[2] The Record lists this as a report prepared on July 16, 2013, but the report is dated July 16, 2012.

3

normal workweek without interruptions from symptoms, interacting appropriately with the public, accepting instructions and responding appropriately to criticism, and responding appropriately to changes at work. Tr. at 1051–52.

In October 2013, Dr. Constantina Abarikwu, Ms. Poulos' treating physician, completed a mental capacity evaluation. Tr. at 1102–03. She treated Ms. Poulos from 2010 when she was diagnosed with bipolar depression and migraine headaches since 2010. Tr. at 1102. Despite treatment with medication and psychological counseling, Dr. Abarikwu found that Ms. Poulos to be moderately limited in her ability to respond appropriately to coworkers and perform repetitive tasks. Tr. at 1102. Ms. Poulos' limitations were moderately severe with regard to understanding, carrying out, and remembering instructions; responding appropriately to supervision; performing simple tasks; and demonstrating reliability. Tr. at 1102–03. Ms. Poulos was also severely limited in responding to customary work pressures, performing complex tasks, maintaining attention and concentration, and demonstrating emotional stability. Tr. at 1102–03. Dr. Abarikwu stated that these findings were based on regular office visits and in consultation with Ms. Poulos' psychologist. Tr. at 1103. She concluded that Ms. Poulos does not have the mental stamina to sustain full-time employment due to intermittent memory lapses and alterations in mental state, as well as anxiety, social phobias, and decreased concentration. Tr. at 1103.

## C. The ALJ's Decision

In August 2016, the ALJ issued a decision unfavorable to Ms. Poulos. At step one, the ALJ found that she had not engaged in substantial gainful activity since October 25, 2010. Tr. at 451. At step two, the ALJ found that Ms. Poulos had the following severe impairments: history of seizures and cerebrovascular accidents, bipolar disorder, depression, and anxiety. Tr. at 452. At step three, the ALJ found that Ms. Poulos did not have an impairment that met or medically

4

equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Appendix 1. Tr. at 452. The ALJ further found that Ms. Poulos had the residual functional capacity (RFC) to perform medium work with the following limitations: she should never climb ladders, ropes, or scaffolds, but she can frequently balance, stoop, crouch, crawl, kneel, and climb ramps and stairs; she is limited to frequent handling and fingering with her right upper extremity, she must avoid use of moving and/or dangerous machinery, all exposure to unprotected heights, and all driving of motor vehicles at work; she is limited to work consisting of simple, routine, and repetitive tasks, and to work in a low stress job, defined as not requiring the worker to cope with work-related circumstances that could be dangerous to herself or others; she can maintain sufficient attention and concentration for extended periods of two-hour segments during a normal workday, but only in work consisting of no more than simple, routine, repetitive tasks; and she is limited to work that requires no more than occasional supervision, defined as requiring a supervisor's critical checking of her work. Tr. at 456. At step four, the ALJ found that Ms. Poulos was unable to perform any of her past relevant work. Tr. at 472. At step five, the ALJ concluded that, considering Ms. Poulos' age, education, work experience, and RFC, she could perform the following jobs in the national economy: hospital cleaner, industrial cleaner, and cook's helper. Tr. at 472–73. In crafting Ms. Poulos' RFC, the ALJ gave great weight to Dr. Geary's opinion, great weight to Dr. Castro's opinion, and little weight to Dr. Abarikwu's opinion. Tr. at 468–69.

### III. STANDARD OF REVIEW

Though the Court's review is de novo, the Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more

than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may not reweigh the evidence, it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

## IV. DISCUSSION

Ms. Poulos raises several challenges to the Commissioner's ruling. She contends that: 1) the ALJ erred in evaluating the opinion of her treating physician, Dr. Abarikwu; 2) the ALJ erred in assessing her credibility; and that the RFC is unsupported by substantial evidence. In addition, she contends that remand is necessary to consider new evidence. The dispositive issue before the Court is the assessment of the opinion of Ms. Poulos' treating physician, Dr. Abarikwu, which impacts determinations at Step 3 and configuration of Ms. Poulos' RFC. Finding both legal error and the absence of substantial evidence to support the ALJ's findings as to limitations in Ms. Poulos' mental functioning, the Court reverses and remands the Commissioner's denial of benefits.

A treating physician's opinion must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques *and* is consistent with the other substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). In addressing these questions, the ALJ must articulate specific, legitimate reasons that describe how the opinion is unsupported by clinical and laboratory diagnostic techniques, or identify the inconsistent evidence in the record. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

If the answer to either of these inquiries is "No", then the opinion is not accorded controlling weight, but is, instead, assessed for comparative weight relative to other medical

opinions. The factors considered for comparative this assessment of medical opinions are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016). In applying these factors, the ALJ must make findings and reasoning sufficiently specific so the weight given is clear to subsequent reviewers. *Langley*, 373 F.3d at 1119.

Dr. Abarikwu opined that Ms. Poulos was moderately limited in responding appropriately to coworkers and performing repetitive tasks; moderately to severely limited in understanding and carrying out instructions, responding appropriately to supervision, and demonstrating reliability; and severely limited in responding to work pressures, performing complex tasks, maintaining concentration, and demonstrating emotional stability. Tr. at 1102–03. Ms. Poulos argues that the ALJ erred in giving little weight to this opinion because the ALJ did not discuss the comparative weight factors and because the opinion is consistent with the record as a whole. The Commissioner responds that Ms. Poulos has failed to show that the ALJ's decision was not based upon substantial evidence.

Both Ms. Poulos' objection and the Commissioner's response blur the distinction between the determination of whether Dr. Abarikwu's opinion was entitled to controlling weight and what its comparative weight should be. But this confusion understandably grows out of the ALJ's failure to employ the two step analytical process. Unfortunately, the ALJ collapsed the required analysis into a single conclusion that Dr. Abarikwu's assessment should be accorded only "little weight" because it was inconsistent with the record as a whole, and particularly with the findings

7

of Drs. Geary and Castro.  In the Decisions, the ALJ stated:

> On October 23, 2013, Constantia Abarikwu, M.D. completed a mental capacities evaluation and noted that the claimant had moderately severe or severe limitations in understanding, remembering, and carrying out instructions, responding appropriately to supervision, performing simple and complex tasks, maintaining attention and concentration, demonstrating reliability, and demonstrating emotional stability  This opinion is given little weight because the longitudinal record shows that the claimant's mental symptoms were far less severe when treated and the opinion is contrary to the findings of Dr. Geary and Dr. Castro, whose findings are well-supported by the entire record.  Accordingly, this opinion is given little weight. . . .
>
> Dr. Abarikwu submitted a letter in response to the initial decision to deny disability.  She reported that the claimant had severe anxiety disorder with intermittent panic attacks that can result in other physical disorders such as severe headaches, dizziness, and fainting spells.  Functionally, Dr. Abarikwu reported that the claimant was no longer able to care for herself and that her family finds her a danger[] to herself and avoids leaving her alone for any extended time.  She concluded that the claimant was unable to hold down any gainful employment in her condition, despite her medication therapy.  As noted earlier, the longitudinal record is not indicative of such severe mental or physical limitations.  Further, the subjective complaints of the claimant's family form a significant basis for this opinion with little reference to objective medical findings or exams.

Tr. at 469 (citation omitted).

The ALJ's failure to engage in the two-step process of assessing whether Dr. Abarikwu's opinion was controlling, and then engaging in a comparative assessment constitutes legal error, but such error is harmless if the ALJ's analysis otherwise addresses the issues inherent in analytical framework.  Here, the ALJ's finding that Dr. Abariku's opinion is inconsistent with the record could be a finding applicable to both the first and second step of the analysis.  The Court therefore understands the ALJ to have determined both that (1) Dr. Abarikwu's opinion is not entitled to controlling weight; and (2) the opinion is given little comparative weight relative to the other medical opinions.

However, in the context of both analytical steps, the ALJ's explication is deficient.  At

8

each step, the ALJ is required to identify specific, good reasons for weight given to the opinion. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). This requires identification of specific evidence in the record that the ALJ found to be inconsistent with Dr. Abarikwu's opinion, as well as demonstration that consistent evidence was considered. *See Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996). But here, all the ALJ offers top support the decision to give the medical opinion of Ms. Poulos' treating physician "little weight" are conclusory statements that the opinion is inconsistent with the longitudinal record, the opinion of Dr. Geary, a consulting examiner, and the opinion of Dr. Castro, a state-agency non-examining consultant.

Such conclusory statements are insufficient to allow this Court to engage in meaningful review. The ALJ does not identify any specific inconsistencies among the medical opinions or inconsistencies between limitations identified by Dr. Abarikwu's and other evidence in the record. In addition, the ALJ fails to reflect consideration of evidence in the record that is consistent with Dr. Abarikwu's opinion. For example, both Dr. Geary's and Dr. Castro's opinions appear to be consistent with Dr. Abariku's opinion to some degree. Dr. Geary's opinion that Ms. Poulos would have difficulty adapting to change in the workplace matches Dr. Abariku's conclusion that Ms. Poulos' her ability to respond to customary work pressures is severely impaired. *See* Tr. at 988, 1102. Dr. Castro's opinion is also partially similar to Dr. Abarikwu's, with both opinions finding moderate limitations in social functioning. *See* Tr. at 1000, 1102.

The ALJ also states that Dr. Abarikwu's opinion is not consistent with the " the longitudinal record" but fails to identify the time period the ALJ considers to be the "longitudinal record" and what evidence during that period is significant. For example, there is no discussion of the scope of each doctor's review and when his or her opinion was rendered. It appears that Dr. Geary conducted a single examination in 2012. Dr. Castro's opinions were based solely two

9

record reviews, apparently both conducted in 2012. Each opinion predated Dr. Abarikwu's October 2013 opinion and therefore did not address it. But interestingly, Dr. Geary's and Dr. Castro's opinions also failed to address any diagnosis or treatment by Dr. Abarikwu, even though such treatment began in 2010. Thus, it would appear that Dr. Geary and Dr. Castro did not consider Ms. Poulos' diagnosis or treatment Dr. Abarikwu or her assessment of Ms. Poulos' limitations. Under such circumstances, it is not surprising that there are inconsistencies among the opinions. The fundamental question is which opinion is more accurate. As to that, the ALJ failed to employ the appropriate legal methodology and offered no specific reasons or supportive evidence. In the absence of application of the proper methodology and adequately explication as to why Dr. Abarikwu's opinion should be given only "little weight", the ALJ has erred and his findings are not supported by substantial evidence. *See Langley*, 373 F.3d at 1119; *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Reversal and remand is appropriate.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED AND REMANDED.** Upon reconsideration, the Commissioner shall consider all pertinent evidence through the hearing date. Judgment shall enter in favor of Ms. Poulos.

Dated this 5th day of December, 2017.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Court